QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Richard A. Schirtzer (Bar. No. 150165)
  richardschirtzer@quinnemanuel.com
  Susan R. Estrich (Bar No. 124009)
  susanestrich@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert L. Raskopf (*pro hac vice pending*)
  robertraskopf@quinnemanuel.com
  Kate E. Cassidy (*pro hac vice pending*)
  katecassidy@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

Attorneys for Deckers Outdoor Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Deckers Outdoor Corporation, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Tom Romeo, an individual; and Romeo & Juliette, Inc., a California corporation<br><br>Defendants. | CASE NO. CV10 8489 DSF FMOx<br><br>COMPLAINT FOR:<br><br>(1) FEDERAL TRADE DRESS INFRINGEMENT;<br><br>(2) FEDERAL TRADE DRESS DILUTION;<br><br>(3) STATE TRADE DRESS DILUTION;<br><br>(4) COMMON LAW UNFAIR COMPETITION;<br><br>(5) STATE UNFAIR AND DECEPTIVE TRADE PRACTICES;<br><br>(6) INDIVIDUAL LIABILITY OF ROMEO;<br><br>(7) COMMON LAW MISAPPROPRIATION; AND<br><br>(8) VIOLATION OF BUSINESS AND PROFESSIONS CODE §§17500 *et seq*<br><br>JURY TRIAL DEMANDED |

1     Plaintiff Deckers Outdoor Corporation ("Deckers") alleges:

2     1.    This action arises from Romeo & Juliette, Inc. ("R&J")'s and Tom

3 Romeo ("Romeo," and collectively with R&J, "Defendants")'s willful, unabashed,

4 and brazen unauthorized copying of Deckers's distinctive trade dress embodied in

5 its UGG® Australia ("UGG®") boots for the purpose of selling their own lower-

6 quality, knock-off boots.  Defendants' slavish imitation of virtually every Deckers

7 boot illegally cashes in on the enormous popularity, goodwill and value of

8 Deckers's highly recognizable trade-dress designs that are embodied in its boots.

9     2.    Deckers first widespread market success came in the form of the novel,

10 non-functional, and highly distinctive trade dress embodied in its "Classic" boot (the

11 "Classic Trade Dress").  The Classic Trade Dress quickly became symbolic of

12 Deckers across the United States ("U.S.") an ambassador of a fashionable yet

13 comfortable boot.  With Deckers's first trade-dress success came the practice now

14 undeniably associated with Defendants:  slavish imitation.  Defendants copied and

15 sold, and continue to sell, inferior knock-offs of the Classic boot, each of Deckers's

16 subsequent boot styles (each style drawing upon the immediately recognizable

17 Classic Trade Dress) and almost every Decker boot.  Defendants' unabashed,

18 slavish, style-by-style copying (i) confuses consumers into believing that

19 Defendants' boots come from, are sponsored or licensed by, or are associated or

20 affiliated with, Deckers and (ii) dilutes Deckers's trade dresses.  This illegal practice

21 will continue unless and until the Court ends it.

22     3.    Since acquiring the UGG® business, including the trademark rights

23 and goodwill in the Classic boot, Deckers has, with consistent and earnest effort,

24 marketed and publicized its distinctive and high-quality boots to American

25 consumers.  Deckers's clear and consistent marketing message has been that its

26 boots represent the highest quality, superior craftsmanship, and fashionable comfort.

27     4.    Deckers's efforts have paid off.  Deckers has achieved double-digit

28 growth every year since 2000, with total annual sales now in excess of $360 million.

-2-

5.      These customer dollars have translated into immediate recognition by U.S. customers of the distinctive trade dresses embodied in several lines of Deckers's boots.  These boots are so readily recognizable as being a Deckers design that the purchasing public need not read a product label or see an imprinted name to recognize and identify the source of the boots as Deckers.  Likewise, news media need not trumpet the name Deckers or its trademark UGG® in articles about these famous boots, because the distinctive trade dress alone identifies Deckers and the UGG® brand under which the boots are sold.  For example, in a September 9, 2010 *Wall Street Journal Magazine* article, the title did not mention Deckers by name: Entitled "The Golden Fleece," the piece relied on a clever picture of Deckers's Classic boots, which alone was enough to convey that the story concerned Deckers:



6.      Here, a picture is certainly worth a thousand words.  The above photograph of Deckers's signature style (that is, the Classic Trade Dress) conveys to

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1  a broad, general audience the subject of the article, yet also signals the high quality
2  and marketplace success associated with the depicted products.

3       7.     Defendants began their infringing activities by selling a knock off of
4  the Classic boot (and its Classic Trade Dress) in discrete markets. As Deckers
5  began to expand its range of boots, Defendants copied and developed knock offs of
6  all of Deckers's other distinctive and famous trade dresses and started selling their
7  entire range of knock-off boots nationwide. Defendants sold their boots under the
8  brand "BearPaw" and have sold these boots through popular websites such as
9  Zappos.com and Amazon.com—websites where Deckers's boots are also sold.

10       8.     A comparison of Deckers's signature style—the Classic Trade Dress
11  embodied in its Classic boot—with one of Defendants' first copy jobs (the BearPaw
12  Eva 8" boot) exemplifies Defendants' practices:

13
14
15
16
17
18
19
20
21
22
23
24
25



26      **Deckers's Classic Short**        **Defendants' BearPaw Eva 8"**
27
28

-4-

1    9.    At no time have Defendants approached Deckers for a license to use
2    any of its trade dresses.

3                                    JURISDICTION

4    10.    This Court has jurisdiction over this action under 28 U.S.C. § 1331
5    (federal question jurisdiction); 28 U.S.C. § 1338(b) (a state claim of unfair
6    competition joined with substantial and related federal claim under trademark laws);
7    28 U.S.C. § 1367 (supplemental jurisdiction); and the doctrines of ancillary and
8    pendent jurisdiction.

9    11.    This Court has personal jurisdiction over Defendants because
10   Defendants conduct business within the State of California and have committed the
11   acts of trade-dress infringement, and federal and state unfair competition, that have
12   given rise to this action in this district. Defendants have established minimum
13   contacts with the forum such that the exercise of jurisdiction over it would not
14   offend traditional notions of fair play and substantial justice.

15                                      VENUE

16   12.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and
17   1391 (c) and 1400(a) because, on information and belief, Defendants reside within
18   this judicial district and/or a substantial part of the events giving rise to the alleged
19   claims in this action occurred in this judicial district.

20                                     PARTIES

21   13.    Deckers is a Delaware corporation having its principal place of
22   business at 495-A South Fairview Avenue, Goleta, California 93117. Deckers
23   designs, manufactures, markets, and sells footwear including the popular UGG®
24   boots for men, women, and children in the U.S.

25   14.    On information and belief, Romeo is a resident of California and is the
26   sole owner and shareholder of R&J.

27   15.    On information and belief, R&J is a California corporation having its
28   principal place of business at 7524 Old Auburn Road, Citrus Heights, California

-5-

1  95610.  Upon further information and belief, R&J makes, markets, imports, offers

2  for sale, sells, and/or distributes footwear sold through retail stores and/or online in

3  the United States, including in this judicial district.

4  GENERAL ALLEGATIONS

5      16.    Since acquiring all rights in the UGG® business in 1995, Deckers has

6  spent millions of dollars promoting its signature style of boot, embodied by the

7  Classic Trade Dress, in high-fashion magazines, on television, through select

8  product placements, and through other forms of advertising and promotion.  These

9  marketing dollars and promotional activities made the Classic Trade Dress

10  recognizable in households nationwide.  As Deckers's signature boot, the Classic

11  need not bear a signature at all—the Classic Trade Dress alone communicates to

12  U.S. consumers that it is a Deckers Classic boot and imparts a message of high

13  quality, superior craftsmanship, and fashionable comfort.

14      17.    Deckers has enjoyed double-digit sales growth for almost a decade.  As

15  a direct result of Deckers's investment in and promotion of its signature style of

16  boot and follow-on trade dresses, annual sales of Deckers's UGG® Australia brand

17  have increased from approximately $14 million in 1995 to over $360 million in

18  2009, a majority of which were Classic, Sundance II, and Cardy boots (described

19  below).

20      18.    Deckers has made its boots famous and highly distinctive through

21  extensive investment in time, money, and resources and through targeted and direct

22  marketing campaigns that have proven successful, evidenced by its year-over-year

23  sales growth.  Through enormous expense and effort, Deckers made a casual, cozy,

24  comfortable boot a highly sought-after fashion symbol.  Today, Deckers's boots are

25  recognizable simply by their trade dresses and are iconic and exceptionally valuable

26  assets.  Deckers transformed the traditional sheepskin boot from fashion indifferent

27  to fashion forward.

28

-6-

1    19.    The high-fashion, comfort-boot craze precipitated by Deckers began
2  when a host of celebrities began wearing Deckers boots in 2000. Oprah Winfrey
3  has named a Deckers boot as one of her favorite things in her annual "Holiday
4  Favorite Things" segment four times since 2000—the Ultra in 2000, the Classic
5  Short in 2003, the Uptown in 2005, and the Crochet in 2007. Other prominent
6  celebrities who are frequently seen wearing Deckers's boots include Kate Moss,
7  Jennifer Lopez, Heidi Klum, Sarah Jessica Parker, Jennifer Aniston, and Sienna
8  Miller. For example, Kate Hudson wore a pair of Deckers's Sundance II boots in
9  the following promotional poster of her movie *Raising Helen*:



20.    Deckers has also received extensive coverage in trade journals and
magazines. Deckers's trade-dress brand, UGG®, was named "Brand of the Year" in
2003 by *Footwear News*, and in 2008, 2009, and 2010 by *Footwear Plus*, two
leading footwear industry publications.

21.    Deckers's marketing and investment in the Classic Trade Dress, plus
the Classic's follow-on lines (each with their own distinctive trade dress), have
resulted in the instant recognition of Deckers's various trade-dress styles.

-7-

1

## A.   THE CLASSIC TRADE DRESS

2    22.    Deckers's signature style and most famous design is embodied in the

3  Classic boot:



(The cuff of the boot can be rolled down as shown in the picture on the left, or styled up as seen in the picture on the right).

13    23.    The Classic is typically a customer's first pair of Deckers boots.  In this

14  regard, consumer-buying behavior and product-branding design track the same

15  course, with the Classic at the helm.

16    24.    Consumers identify a Classic boot from its novel, non-functional, and

17  highly distinctive Classic Trade Dress.  The Classic Trade Dress includes, but is not

18  limited to, a combination of the following non-functional elements:

(a). An exaggerated, raised and exposed, circular stitch pattern:



(b). A license-plate-type shape on the heel:



-8-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(c). Exposed wool or shearling tufting:

(d). A raised and rounded dome shaped toe—known in the industry as a "vamp":

(e). A suede heel overlay on the boot's exterior:

(f). Brushed suede:

(g). A thick, flat sole:

-9-

(h). Fabric binding, for example:



25.     These design elements, among others, represent to the U.S. consuming public that: (1) a boot with these elements constitutes the Deckers signature Classic Trade Dress; (2) Deckers manufactures this boot according to the strict quality standards that Deckers's customers have come to know and expect; and (3) Deckers has vouched for the quality and workmanship that went into making the boot. These design elements, among others, function in combination as a source identifier for consumers, communicating that these boots are Deckers boots.

26.     The distinctive, signature elements of the Classic Trade Dress are found on Deckers's boots of varying heights and on boots that may include additional adornments (such as on the Deckers Bailey Button) or seaming (such as the Deckers Ultra).  Nevertheless, the distinctive trade-dress elements of the Classic Trade Dress are included in each of these boots.  The Classic Trade Dress has secondary meaning and is famous both to Deckers's customers and the general public in the U.S.

27.     Deckers has spent millions of dollars advertising and promoting the Classic Trade Dress.  As a result of Deckers's efforts, Deckers's Classic boot has become enormously popular among celebrities.  Pictured in photos published on the internet are respectively Kate Moss, Sienna Miller, Hilary Duff, Jennifer Aniston, Eva Longoria, and Teri Hatcher wearing Deckers Classic boots.



28.    The widespread acceptance of the Deckers's Classic boot among celebrities, combined with extensive marketing and advertising, has made the Deckers Classic Trade Dress highly distinctive, famous, and a coveted item nationwide.

## B.    THE CARDY TRADE DRESS

29.    Extending the Classic Trade Dress into further designs, Deckers released the Classic Cardy boot (the "Cardy") in Spring 2008:



The Cardy reflects the Classic Trade Dress and the Classic Trade Dress protects this boot.  In addition to and notwithstanding its protectable Classic Trade Dress, the Cardy boot is also protected by its own novel, non-functional, and highly distinctive

-11-

trade dress (the "Cardy Trade Dress").  The Cardy Trade Dress includes the

following non-functional elements:

(a).  An exaggerated, raised and exposed, circular stitch pattern:

(b).  A license-plate shape on the heel:

(c).  A raised and rounded dome shaped toe:

(d).  A suede heel overlay on the boot's exterior:

(e)  Brushed suede:

-12-

(f). A knitted upper and vamp:

(g). A thick flat sole:

(h). Fabric binding, for example:

(i). Buttons on the lateral side of the boot:

30.     The Cardy Trade Dress therefore embodies Deckers's signature Classic Trade Dress, as well as constituting its own unique trade dress.

31.     In combination, these design elements represent to the U.S. consuming public that: (1) this boot is a Deckers boot; (2) Deckers manufactures this boot according to the strict quality standards that its customers have come to know and expect; and (3) Deckers has vouched for the quality and the workmanship that went into making the boot.  These design elements, among others, function in

-13-

1  combination as a source identifier for consumers, comunicating that these boots are
2  Deckers boots. That is, when a customer purchases a boot with the Cardy Trade
3  Dress, she expects to get a Deckers boot. The Cardy Trade Dress has secondary
4  meaning and is famous both to Deckers's customers and the general public in the
5  U.S. for the signature Classic trade dress it embodies, as well as for its own
6  distinctive style.

7      32.    Deckers has spent millions of dollars advertising and promoting the
8  Cardy Trade Dress. As a result of Deckers's efforts, Deckers's Cardy boot has
9  become enormously popular among celebrities and a coveted item nationwide.
10 Pictured in photos published on the internet are respectively Kate Hudson, Teri
11 Hatcher, Megan Fox, Denise Richards, Ashley Greene, Jennifer Love Hewitt, and
12 Katie Price wearing a Deckers Cardy boot.

13
14
15
16
17
18
19
20



21     33.    In addition to its own independent fame, the Cardy Trade Dress
22 achieved instant fame nationwide because of its inherent Classic Trade-Dress style.
23 Consequently, because the Cardy Trade Dress incorporates the Classic Trade Dress,
24 consumers instantly identified the Cardy boot as a Deckers boot. The Cardy boot's
25 own signature trade dress is now also famous.

26
27
28

-14-

1

## C.   THE SUNDANCE II TRADE DRESS

2      34.    Another highly distinctive extension of the Classic Trade Dress is

3   Deckers's Sundance II boot (the "Sundance II"), which Deckers released in Fall

4   2001:

5

6 

7   (The cuff of the
boot can be rolled
8   down as shown on
the left, or styled
9   up as shown on
the right).

10

11

12

13   The Sundance II reflects the Classic Trade Dress and the Classic Trade Dress

14   protects this boot.  In addition to and notwithstanding its protectable Classic Trade

15   Dress, the Sundance II boot is also protected by its own novel, non-functional, and

16   highly distinctive trade dress (the "Sundance II Trade Dress").  The Sundance II

17   Trade Dress includes the following non-functional elements:

18

19      (a). Exposed wool or shearling
running in lines down the back
20   and sides of the boot
and across the vamp:
21

22

23

24

25

26

27

28

-15-

(b).  A license-plate-type shape on the heel:



(c). Exposed wool or shearling:



or



(d). A raised and rounded dome shaped toe:



(e).  A suede heel overlay on the boot's exterior:



(f). Brushed suede:



-16-

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1

(g). A thick sole:

2

3

(h). A toe-plate across the front of
the vamp:

4

5

6



7

35.     The Sundance II Trade Dress therefore embodies Deckers's signature

8

Classic Trade Dress, as well as constituting its own unique Trade Dress.

9

36.     In combination, these design elements represent to the U.S. consuming

10

public that: (1) this boot is a Deckers boot; (2) Deckers manufactures this boot

11

according to the strict quality standards that its customers have come to know and

12

expect; and (3) Deckers has vouched for the quality and the workmanship that went

13

into making the boot.  These design elements, among others, function in

14

combination as a source identifier, communicating that these boots are Deckers

15

boots.  That is, when a customer purchases a boot with the Sundance II Trade Dress,

16

she expects to get a Deckers boot.  The Sundance II Trade Dress has secondary

17

meaning and is famous both to Deckers's customers and the general public in the

18

U.S. for the signature Classic trade dress it embodies, as well as for its own

19

distinctive style.

20

37.     Deckers has spent millions of dollars advertising and promoting the

21

Sundance II Trade Dress.  As a result of Deckers's efforts, Deckers's Sundance II

22

boot has become enormously popular among celebrities.  Pictured in photos

23

published on the internet are respectively Vanessa Hudgens, Vanessa Minnillu,

24

Jessica Simpson, Kate Walsh, Eva Longoria, and Kate Hudson wearing Deckers

25

Sundance II boots.

26

27

28

-17-

38.    In addition to its own independent fame, and as with the Cardy Trade Dress, the Sundance II Trade Dress achieved instant fame nationwide because of its inherent Classic Trade-Dress style.  Consequently, because the Sundance II Trade Dress incorporates the Classic Trade Dress, consumers instantly identified the Sundance II boot as a Deckers boot.  The Sundance II boot's own signature trade dress is now also famous.

### D. DEFENDANTS' WRONGFUL ACTS

39.    Upon information and belief, after Deckers and its predecessors had already spent decades selling its signature style of boot—the Classic—and had spent millions of dollars marketing the Classic Trade Dress, Defendants started selling boots in the U.S. under the BearPaw brand.

40.    Deckers's success with its unique designs was certainly not lost on Defendants.  Riding the coattails of Deckers's labor, upon information and belief, Defendants began making footwear specifically to imitate Deckers's boots.  Today, virtually the entire line of Defendants' boots mirrors Deckers's signature line and mimics the Classic Trade Dress and the other styles embodying that iconic trade dress.

-18-

41.    Defendants have engaged, and continue to engage, in a deceptive and inequitable pattern of conduct.  Upon information and belief, Defendants purchase Deckers boots and order their manufacturing facility to create knock offs of those designs.  Defendants subsequently sell such recast boots in the U.S. under the BearPaw label.

42.    Defendants sell their BearPaw knock offs through many of the same trade channels that Deckers sells its own boots.  Indeed, BearPaw and UGG® boots are available through identical online retailers, such as Zappos.com, Amazon.com, and Shoes.com.

### 1.    DEFENDANTS' INFRINGEMENT AND DILUTION OF DECKERS'S TRADE DRESSES

43.    Defendants have actively marketed, promoted, offered for sale, and sold BearPaw boots that infringe, dilute, and otherwise unfairly compete with the Classic Trade Dress.  For example:



**UGG® Classic Tall**



**Defendants' BearPaw Eva 12"**

-19-

44.   The striking similarity between Classic Trade Dress and the design of BearPaw's infringing and diluting boots is plain.  Defendants have copied the essential elements of Deckers's signature Classic Trade Dress.  Defendants' use of Deckers's distinctive, non-functional Classic Trade Dress confuses consumers that its boots come from, are sponsored or licensed by, or are associated or affiliated with, Deckers.

45.   The Classic Trade Dress was famous and highly distinctive before Defendants started selling cheap imitations.  Thus, Defendants' use of the Classic Trade Dress in its BearPaw boots dilutes the Classic Trade Dress by tarnishment and by blurring.

46.   As is Defendants' *modus operandi,* the BearPaw line imitates the Classic Trade Dress.  For example:



**Defendants' BearPaw Eva 12"**



**UGG® Classic Tall**



**Defendants' BearPaw Emma 12"**

-20-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



UGG® Short

Defendants' BearPaw Eva 8"

UGG® Mini

Defendants' BearPaw Demi

UGG® Ultra Tall

Defendants' BearPaw Dream 12"

-21-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Defendants' BearPaw Dream 8"**



**UGG® Ultra Short**



**Defendants' BearPaw Meadow 8"**



**UGG® Bailey Button**



**Defendants' BearPaw Victoria**

-22-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Defendants' BearPaw Knit Tall**





**UGG® Cardy**

**Defendants' BearPaw Cable Knit**

-23-

1
2
3
4
5
6
7
8



| **UGG® Sundance II** | **Defendants' BearPaw Eskimo** |

9     47.     Defendants' entire line of BearPaw boots embodies Deckers's Classic
10   Trade Dress, which was famous and highly distinctive before Defendants started
11   selling inferior imitations.  BearPaw boots are confusingly similar to Deckers's
12   Classic Trade Dress and dilutes it by tarnishment and blurring.  Further, Defendants'
13   uses of the Cardy Trade Dress and Sundance II Trade Dress in BearPaw boots
14   infringe not only Deckers's Classic Trade Dress, but also the Cardy Trade Dress,
15   and Sundance II Trade Dress, respectively, and dilutes them by tarnishment and by
16   blurring.

17
18
19
20
21
22
23
24
25
26
27
28

-24-

1

2.   INFERIOR QUALITY OF BEARPAW BOOTS

2        48.   Deckers boots are manufactured to the highest standards whereas

3    BearPaw boots are not.  For example upon information and belief:

| | |
|---|---|
| • Deckers uses the finest grade twin-faced sheepskin. | • Defendants typically use cheap cow hide or suede that is glued to low-quality or synthetic wool. |
| • Deckers employs high-quality thread to match the color of its boots and insists on uniform stitching. | • Defendants typically use cheaper thread with sloppy stitching. |
| • Deckers uses a reinforced heel counter inside the boot to provide support and to stop the heel from collapsing or bunching. | • Defendants typically do not insert any such device in their boot. |

13        49.   The poor-quality boots Defendants market and sell as imitation Deckers

14   boots tarnish the Classic Trade Dress, Cardy Trade Dress, and Sundance II Trade

15   Dress (collectively, the "Deckers Trade Dress").  Copycats like Defendants should

16   not be permitted to steal this hard-earned goodwill, much less confuse the public

17   into believing that Deckers created, endorsed, or is affiliated with an inferior product

18   line such as BearPaw.

19        50.   Defendants' conduct is all the more culpable in light of the limitless

20   options available to manufacture a sheepskin boot.  Given the infinite ways to

21   design around the Deckers Trade Dress (as the vast array of boot designs in the

22   market exemplifies), there is no need for Defendants to imitate slavishly the Deckers

23   Trade Dress to sell a sheepskin boot in the U.S.

24

INJURY TO DECKERS

25        51.   Upon information and belief, customers and potential customers are

26   likely to be confused as to the source or sponsorship of, or association or affiliation

27   with, the BearPaw infringing, imitative boots.  The BearPaw knock-off boots are

28

-25-

1 | essentially indistinguishable from the Deckers lines upon which they are modeled.
2 | When viewed in any context (pre-sale, at point-of-sale, or afterward), the likely
3 | perception will be that each BearPaw infringing boot comes from, is sponsored or
4 | authorized by, or is affiliated or associated with the Deckers brand. Further, upon
5 | information and belief, the BearPaw infringing boots are sold through some of the
6 | same trade channels as are Deckers boots.

7 |     52.    Upon information and belief, Defendants' unauthorized manufacture,
8 | use, offer to sell, sale, and/or distribution of its boots infringes the Deckers Trade
9 | Dress.

10 |     53.    Defendants misappropriated and used the Deckers Trade Dress without
11 | authority from Deckers. Upon information and belief, Defendants manufacture,
12 | import, market, advertise, and/or sell BearPaw boots to profit from the demand that
13 | Deckers created for UGG® boot, and to trade on Deckers's goodwill in the
14 | distinctive Deckers Trade Dress.

15 |     54.    Because Defendants' boots are nearly identical imitations of the
16 | distinctive Deckers Trade Dress, Defendants' actions create the possibility that the
17 | Deckers Trade Dress will no longer serve as a unique identifier of Deckers's boots
18 | to U.S. consumers. The presence of BearPaw boots in the marketplace diminishes
19 | and is likely to diminish the apparent exclusivity of genuine Deckers boots and
20 | dilute the brand.

21 |     55.    Further, Defendants' BearPaw boots are of far lesser quality than
22 | Deckers's genuine boots. The inferior BearPaw boots thus will tarnish the
23 | reputation that Deckers has worked so hard to build in its brand.

24 |     56.    Defendants blatantly disregard Deckers's rights in the Deckers Trade
25 | Dress by selling their own inferior imitations of Deckers boots to U.S. consumers.
26 | Defendants' improper and unauthorized use of the Deckers Trade Dress dilutes the
27 | quality of Deckers's designs by diminishing the capacity of each trade dress to
28 | identify Deckers's boots as genuine. Given the poor quality of Defendants'

1 | imitations of the distinctive Deckers Trade Dress, the association Defendants have
2 | intentionally created with the Deckers Trade Dress will be detrimental to Deckers's
3 | business and its image, which it has spent millions of dollars and great effort to
4 | create. As a result, Deckers will suffer lost sales and foregone business because of
5 | the improper and negative associations between Deckers's brand and the cheap
6 | BearPaw imitations.

7 |     57.   Upon information and belief, Defendants' designed and manufactured
8 | its BearPaw boots with the purpose and intent of mimicking the Deckers Trade
9 | Dress and thereby confuse and mislead the public, and create a false association
10 | between its BearPaw boots and the Deckers boots.

11 |     58.   Defendants' use of the Deckers Trade Dress is illegal, flagrant, and
12 | unabashed. Defendants' use of the Deckers Trade Dress is in bad faith, with full
13 | knowledge of Deckers's rights in the Deckers Trade Dress, and with the intent to
14 | deceive and mislead the public into believing that Defendants' BearPaw boots are
15 | sponsored, licensed, authorized by, affiliated, connected, or otherwise associated
16 | with the Deckers brand.

17 |     59.   Defendants' use of the famous and distinctive Deckers Trade Dress is
18 | likely to diminish, blur, and/or tarnish the Deckers Trade Dress, thereby diluting its
19 | distinctive qualities and causing reputational harm to Deckers.

20 |     60.   Deckers has sustained and will continue to sustain damages as a result
21 | of Defendants' wrongful conduct.

22 |     61.   Defendants have continued their wrongful conduct. As a direct and
23 | proximate result of Defendants' acts alleged above, Deckers has sustained and will
24 | sustain damages. Deckers has no adequate remedy at law to redress all of the
25 | injuries that Defendants have caused and intend to cause by their conduct. Deckers
26 | will continue to suffer irreparable damage and harm to its reputation and sustain lost
27 | profits until Defendants' actions alleged above are enjoined.

28

1        ROMEO'S WRONGFUL ACTS

2        62.    Upon information and belief, Romeo is the founder, sole owner, and
3    sole shareholder of R&J.

4        63.    Upon information and belief, Romeo directly and personally
5    participated in the infringing activities detailed above.  For example, upon
6    information and belief, Romeo directly and personally participated in determining
7    and approving the design of the infringing BearPaw boots with the specific intent of
8    infringing the Deckers Trade Dress.  In addition, upon information and belief,
9    Romeo directed others to design, manufacture, and sell BearPaw boots with the
10   specific intent of infringing the Deckers Trade Dress.  Further, upon information
11   and belief, Romeo, as an officer and owner of R&J, authorized and approved of the
12   infringing misconduct alleged herein.

13       64.    Upon information and belief, Romeo is a moving, active, conscious
14   force behind R&J's infringement.

15                            **CAUSES OF ACTION**

16                         **FIRST CAUSES OF ACTION**

17        **[Federal Trade-Dress Infringement and Unfair Competition**
                    **(Lanham Act, 15 U.S.C. § 1125(a))]**
18

19       65.    Deckers re-alleges and incorporates the allegations set forth in
20   paragraphs 1 through 64 herein.

21       66.    Defendants make, import, distribute, use, offer to sell, and sell in the
22   U.S. footwear products that directly infringe Deckers's Trade Dress in violation of
23   § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Deckers has been actively
24   marketed, promoted, and sold continuously the Deckers Trade Dress such that it has
25   acquired secondary meaning within the relevant market and among the U.S. public.
26   Defendants' have used the Deckers Trade Dress without the authorization of
27   Deckers and continues to trade off the goodwill created and maintained by Deckers
28   in the Deckers Trade Dress.  Defendants activities are likely to cause confusion,

-28-

1  mistake, or deception as to the source of Defendants' products and Defendants'
2  association with Deckers. Accordingly, Deckers is entitled to injunctive relief
3  pursuant to 15 U.S.C. § 1116.

4      67.    Defendants' use of the Deckers Trade Dress has been and continues to
5  be willful and Deckers therefore is entitled to damages pursuant to 15 U.S.C.
6  § 1117(a), including Defendants' profits, and/or Deckers's actual damages and/or
7  the costs of this action. Deckers is further entitled to attorneys' fees and costs
8  because of Defendants' conduct.

9                          **SECOND CAUSE OF ACTION**

10     **[Federal Trade-Dress Dilution (Lanham Act, 15 U.S.C. § 1125(c))]**

11     68.    Deckers repeats and incorporates by reference the allegations in
12  paragraphs 1 through 67 herein.

13     69.    Deckers has extensively and continuously promoted and used the
14  Deckers Trade Dress in the U.S., and each trade-dress style has become a famous
15  and well-known indicator of the origin of Deckers's boots.

16     70.    Defendants' are making commercial use in commerce of trade dress
17  that dilutes and is likely to dilute the distinctiveness of the Deckers Trade Dress by
18  eroding the public's exclusive identification of the famous Deckers Trade Dress
19  with Deckers, tarnishing and degrading the positive associations and prestigious
20  connotations of the Deckers Trade Dress, and otherwise lessening the capacity
21  Deckers's Trade Dress to identify and distinguish goods and services.

22     71.    Defendants' actions demonstrate an intentional, willful, and malicious
23  intent to trade on the goodwill associated with the Deckers Trade Dress or to cause
24  dilution of the Deckers Trade Dress, to the great and irreparable injury of Deckers.

25     72.    Defendants' have caused and will continue to cause irreparable injury
26  to Deckers's goodwill and business reputation, and dilution of the distinctiveness
27  and value of the famous and distinctive Deckers Trade Dress in violation of 15
28  U.S.C. § 1125(c), and Deckers therefore is entitled to injunctive relief and to

-29-

1  Defendants' profits, actual damages, enhanced profits and damages, costs, and
2  reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

3                    **THIRD CAUSE OF ACTION**

4         **[State Trade-Dress Dilution and Injury to Business Reputation]**

5         73.    Deckers repeats and incorporates by reference the allegations contained
6  in paragraphs 1 through 72.

7         74.    Deckers has extensively and continuously promoted and used the
8  Deckers Trade Dress throughout the U.S. and the Deckers Trade Dress has become
9  a famous, highly distinctive and well-known symbol of Deckers's boots.

10        75.    Defendants' unauthorized use of the Deckers Trade Dress dilutes the
11 distinctiveness of the trade dress by eroding the public's exclusive identification of
12 this distinctive trade dress with Deckers, and tarnishing and degrading the positive
13 associations and prestigious connotations thereof.

14        76.    Defendants are causing and will continue to cause irreparable injury to
15 Deckers's goodwill and business reputation, and dilution of the distinctiveness and
16 value of Deckers's Trade Dress in violation of the antidilution laws, whether
17 codified by statute or developed by common law, of all U.S. states, including
18 without limitation:  California, CAL. BUS. & PROF. CODE § 14200 *et seq.*; New
19 York, N.Y. GEN. BUS. Law § 360-1; Pennsylvania, 54 PA. CONS. STAT. ANN. §
20 1124; South Carolina, S.C. CODE ANN. § 39-15-1165; Texas, TEX. BUS. &
21 COM. CODE ANN. § 16.29; Utah, UT. CODE ANN. § 70-3a-403; and
22 Washington, WASH. REV. CODE ANN. § 19.77.160.

23        77.    Deckers therefore is entitled to injunctive relief, damages and costs, as
24 well as, if appropriate, enhanced damages, and reasonable attorneys' fees.

25                    **FOURTH CAUSE OF ACTION**

26                    **[Common-Law Unfair Competition]**

27        78.    Deckers re-alleges and incorporates the allegations set forth in
28 paragraphs 1 through 77 herein.

                                      -30-

1      79.    The aforesaid acts of Defendants constitute use that is likely to cause
2  confusion as to the source of Defendants' goods.

3      80.    The aforesaid acts of Defendants constitute unfair competition in
4  violation of the common law.

5      81.    The aforesaid acts of Defendants have caused, and are causing, great
6  monetary harm to Deckers.  In addition, and independently, the aforesaid acts of
7  Defendants have caused, and are causing, great and irreparable harm to Deckers,
8  and unless permanently restrained by this Court, said irreparable injury will
9  continue.

10      82.    Because Defendants engaged in knowing, willful, and conscious
11  disregard for the rights of Deckers, Defendants are guilty of oppression, fraud, and
12  malice, entitling Deckers to an award of punitive damages.

13  **FIFTH CAUSE OF ACTION**

14  **[State Unfair and Deceptive Trade Practices]**

15      83.    Deckers re-alleges and incorporates the allegations set forth in
16  paragraphs 1 through 82 herein.

17      84.    Defendants have been and are passing off their goods as those of
18  Deckers, causing a likelihood of confusion or of misunderstanding as to the source,
19  sponsorship, or approval of Defendants' boots as to Defendants' affiliation,
20  connection, or association with Deckers, and otherwise damaging the public.
21  Defendants' conduct, as complained of herein, were and continue to be willful and
22  intentional.  Defendants conduct constitutes unfair and deceptive acts or practices in
23  the course of a business, trade, or commerce in violation of the statute or common
24  law of all U.S. states, including without limitation:  the laws of California, CAL.
25  BUS. & PROF. CODE § 17200 *et seq.*; New York, N.Y. GEN. BUS. L. § 349;
26  South Carolina, S.C. CODE ANN. §§ 39-5-10 through 39-5-560; and Utah, UTAH
27  CODE ANN. § 13-5—1, *et seq.*; and the unfair and deceptive trade practices statutes
28  and common law of other states, including without limitation:  Illinois, 815 ILL.

-31-

1  COMP. ANN. 510/1 TO 510/7; Maine, ME. REV. STAT. TIT. 10, §§ 1211-1216;

2  Minnesota, MINN. STAT. ANN. §§ 325D.43-325D.48; and Ohio, OHIO REV.

3  CODE ANN. §§ 4165.01 to 4165.04.

4      85.    Defendants' unauthorized use of confusingly similar imitations of the

5  Deckers Trade Dress has caused and is likely to cause substantial and irreparable

6  injury to the public and to Deckers, and Deckers is entitled to injunctive relief and to

7  recover damages, punitive damages, costs, and reasonable attorneys' fees.

8                          **SIXTH CAUSE OF ACTION**

9      **[Individual Liability of Romeo (Lanham Act, 15 U.S.C. § 1125(a))]**

10     86.    Deckers re-alleges and incorporates the allegations set forth in

11  paragraphs 1 through 85 herein.

12     87.    Romeo is a moving, active, conscious force behind R&J's

13  infringement.

14     88.    Romeo directly and personally participated in the infringing and unfair

15  competing activities detailed above by designing and selling, and directing others to

16  design and sell, BearPaw boots that infringe upon and unfairly compete with the

17  Deckers Trade Dress, and authorized and approved others to engage in the wrongful

18  misconduct alleged herein.

19     89.    Romeo's intentional, willful and malicious misconduct alleged above

20  has caused and is likely to cause substantial injury to the public and to Deckers, and

21  Deckers is entitled to injunctive relief and to recover damages, punitive damages,

22  costs, and reasonable attorneys' fees.

23                        **SEVENTH CAUSE OF ACTION**

24                        **[Common Law Misappropriation]**

25     90.    Deckers re-alleges and incorporates the allegations set forth in

26  paragraphs 1 through 89 herein.

27     91.    Defendants created its products through extensive time, labor, skill, and

28  money.  Defendant used that information in competition with Deckers, thereby

-32-

1   gaining a special advantage in that competition because Defendants are burdened
2   with little or none of the expenses incurred by plaintiff in its product development.

3       92.   Defendants' actions demonstrate an intentional, willful, and malicious
4   intent to misappropriate the hard work of Deckers in developing its products.

5       93.   As a result of Defendants' acts, Plaintiff has been substantially injured
6   and is entitled to injunctive relief and to recover damages. Additionally, Plaintiff is
7   entitled to recover any unjust enrichment caused by Defendant's misappropriation of
8   Plaintiff's property, as well as punitive damages, costs and reasonable attorneys'
9   fees.

10                          **EIGHTH CAUSE OF ACTION**

11                        **[False Or Misleading Statements]**

12      94.   Deckers re-alleges and incorporates the allegations set forth in
13   paragraphs 1 through 93 herein.

14      95.   Defendants' acts, as alleged herein, constitute false or misleading
15   statements under CAL. BUS. & PROF. CODE § 17500.

16      96.   Defendants' false or misleading statements were and continue to be
17   willful and intentional.

18      97.   Defendants' false or misleading statements will continue unless
19   enjoined by this Court. Deckers has suffered and continues to suffer irreparable
20   injury, for which it has no remedy at law as a result of Defendants' false or
21   misleading statements.

22      98.   Defendants' false or misleading statements have caused and is likely to
23   cause substantial injury to Deckers, and Deckers is entitled to disgorgement of
24   Defendants' profits and injunctive relief.

25                            **PRAYER FOR RELIEF**

26   WHEREFORE, Deckers prays that:

27      1.   Defendants and all of their agents, officers, employees, representatives,
28   successors, assigns, attorneys, and all other persons acting for, with, by, through, or

-33-

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1 | under authority from Defendants, or in concert or participation with Defendant, and
2 | each of them, be enjoined permanently, from:

3 |     a.     using the Deckers Trade Dress, or any other copy, reproduction, or
4 |           colorable imitation or simulation of the Deckers Trade Dress, on or in
5 |           connection with Defendants goods;

6 |     b.     using any design or source designation of any kind on or in connection
7 |           with Defendants' goods that is a copy, reproduction, colorable
8 |           imitation, or simulation of, or confusingly similar to, the Deckers Trade
9 |           Dress;

10 |     c.     using any trade dress, design, or source designation that is likely to
11 |           cause confusion, mistake, deception, or public misunderstanding that
12 |           such goods or services are produced or provided by Deckers, or are
13 |           sponsored or authorized by Deckers, or are in any way connected or
14 |           related to Deckers;

15 |     d.     using any trade dress, design, or source designation of any kind on or in
16 |           connection with Defendants' goods that dilutes or is likely to dilute the
17 |           distinctiveness of the Deckers Trade Dress; and

18 |     e.     passing off, palming off, or assisting in passing off or palming off,
19 |           Defendants' goods as those of Deckers, or otherwise continuing any
20 |           and all acts of unfair competition as alleged in this Complaint.

21 |     2.     Defendants be ordered to recall all products bearing the Deckers Trade
22 | Dress or any other confusingly similar variation thereof (including but not limited to
23 | those products listed by product number in Exhibit A), which have been shipped by
24 | Defendants or under their authority, to any customer, including, but not limited to,
25 | any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to
26 | each customer a copy of this Court's order as it relates to said injunctive relief
27 | against Defendants.

28 |

-34-

1    3.    Defendants be ordered to deliver up for impoundment and for
2  destruction all footwear, bags, boxes, labels, tags, signs, packages, receptacles,
3  advertising, sample books, promotional material, stationary or other materials in the
4  possession, custody, or under the control of Defendants that are found to adopt,
5  infringe, or dilute Deckers's Trade Dress or that otherwise unfairly compete with
6  Deckers and its products.

7    4.    Defendants be compelled to account to Deckers for any and all profits
8  derived by Defendants from the sale or distribution of infringing goods as described
9  in this Complaint, including, but not limited to, those products listed by product
10  number in Exhibit A.

11    5.    Deckers be awarded all damages caused by the acts forming the basis
12  of this Complaint.

13    6.    Defendants be compelled to account for and turn over to Deckers all
14  gains, profits, and advantages derived by Defendants' for making false or
15  misleading statements and engaging in acts of unfair competition in violation of
16  CAL. BUS. & PROF. CODE § 17200 and 17500, as well as such gains, profits, and
17  advantages available under federal, state, and common law.

18    7.    Based on Defendants knowing and intentional use of confusingly
19  similar imitations of the Deckers Trade Dress, the damages award be trebled and the
20  award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a)
21  and the state statutes cited in this Complaint.

22    8.    Defendants be required to pay to Deckers the costs and reasonable
23  attorneys' fees that Deckers has and will incur in this action pursuant to 15 U.S.C. §
24  1117(a) and the state statutes cited in this Complaint.

25    9.    Based on Defendants' willful and deliberate infringement and dilution
26  of the Deckers Trade Dress and to deter such conduct in the future, Deckers be
27  awarded punitive damages.

28

-35-

1        10.   It have such other and further relief as the Court may deem just.

2   Date: November 8, 2010                    Respectfully submitted,

3

4                                             _____

5                                             Richard A. Schirtzer (Bar. No. 150165)
                                                richardschirtzer@quinnemanuel.com
6                                             Susan R. Estrich (Bar No. 124009)
                                                susanestrich@quinnemanuel.com
7                                             QUINN EMANUEL URQUHART &
8                                                SULLIVAN, LLP
                                              865 South Figueroa Street, 10th Floor
9                                             Los Angeles, California  90017-2543
10                                            Telephone:  (213) 443-3000
                                              Facsimile:   (213) 443-3100
11

12                                            Attorneys for Plaintiff *Deckers Outdoor*
                                              *Corporation*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1

2

## JURY TRIAL DEMAND

3      Deckers respectfully demands a trial by jury on all claims and issues so

4  triable.

5

6  Date:  November 8, 2010                    Respectfully submitted,

7

8                                             _____

9                                             Richard A. Schirtzer (Bar. No. 150165)
                                                richardschirtzer@quinnemanuel.com
10                                            Susan R. Estrich (Bar No. 124009)
                                                susanestrich@quinnemanuel.com
11                                            QUINN EMANUEL URQUHART &
                                                SULLIVAN, LLP
12                                            865 South Figueroa Street, 10th Floor
13                                            Los Angeles, California  90017-2543
                                              Telephone:  (213) 443-3000
14                                            Facsimile:   (213) 443-3100
15

16                                            Attorneys for Plaintiff *Deckers Outdoor*
                                              *Corporation*
17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

# EXHIBIT A

# EXHIBIT A
## DEFENDANTS' INFRINGING BOOTS[1]

| | | | | |
|---|---|---|---|---|
| **BearPaw Style** ● **"EVA"** | <br>**Eva 8" SKUs**<br>831201, 831202, 831203, 831204. | <br>**Eva 10" SKUs**<br>833302, 833303, 833304, 833305, 833306, 833308, 833309. | <br>**Eva 12" SKUs**<br>833401, 833403, 833404, 833406, 833407, 833408. | <br>**Eva 13" SKUs**<br>834001, 834003, 834004. |
| **BearPaw Style** ● **'EMMA"** | <br>**Emma 8" SKUs**<br>850801, 850802, 850803, 850804, 850805. | <br>**Emma 10" SKUs**<br>851001, 851002, 851003, 851004. | <br>**Emma 12" SKUs**<br>851201, 851202, 851203, 851204, 851205, 851206. | |

[1] Deckers reserves the right to add additional infringing boots to this list as this case progresses through discovery.

EXHIBIT A
PAGE 38

| BearPaw Style "MEADOW" |  **Meadow 8" SKUs** 840801, 840802, 840803, 840804. |  **Meadow 10" SKUs** 841001, 841002, 841003, 841004. |  **Meadow 12" SKUs** 841201, 841202, 841203, 841204. |
|---|---|---|---|
| BearPaw Style "DREAM" |  **Dream 8" SKUs** 831302, 831303, 831304, 831305. |  **Dream 10" SKUs** 832202, 832203, 832206, 832207, 832208. |  **Dream 12" SKUs** 832302, 832303, 832306, 832307, 832308. |

EXHIBIT A
PAGE 39

| | |
|---|---|
| **BearPaw Style "VICTORIA"** |  **Victorian SKUs** 828701, 828702, 828703, 828704. |
| ● **BearPaw Style "DEMI"** |  **Demi SKUs** 832002, 832004, 832005. |
| **BearPaw Style** ●**"CABLE KNIT"** |  **Cable Knit SKUs** 827801, 827802, 827803. |

EXHIBIT A
PAGE 40

| | |
|---|---|
| **BearPaw Style "KNIT TALL"** ● |  **Knit Tall SKUs** 830401, 830402, 830403, 830404. |
| **BearPaw Style "CROCHET"** |  **Crochet SKUs** 830502, 830504, 830505. |
| ● **BearPaw Style "ESKIMO"** |  |

EXHIBIT A
PAGE 41

| | Eskimo SKUs<br>829901, 829902. |
|---|---|
| **BearPaw Style<br>"SHERPA"** | <br>Sherpa SKU<br>829802. |

EXHIBIT A
PAGE 42

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV10- 8489 DSF  (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central      District of California

Deckers Outdoor Corporation,a
Delaware corporation,

*Plaintiff*

v.

Tom Romeo, an individual; and Romeo &
Juliette, Inc., a California corporation

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.   CV10 8489 DSF FMOX

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Quinn Emanuel Urquhart Oliver & Sullivan, LLP,
Richard Schirtzer
Susan R. Estrich
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____      NOV - 8

**CHRISTOPHER POWERS**
_____
*Signature of Clerk or Deputy Clerk*

SEAL

AO-440

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

                                              _____
                                                     *Server's signature*

                                              _____
                                                     *Printed name and title*

                                            _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>Deckers Outdoor Corporation, a Delaware corporation | **DEFENDANTS**<br>Tom Romeo, an individual; and Romeo & Juliette, Inc., a California corporation |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Quinn Emanuel Urquhart Oliver & Sullivan<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Richard A. Schirtzer [Bar No. 150165]<br>213-443-3000 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Federal question jurisdiction (28 U.S.C. Section 1331);trade dress infringement; dilution, unfair competition joined with federal claim under trademark laws(28 U.S.C. Section 1338(b); supplemental jurisdiction (28 U.S.C. Section 1367)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

| | |
|---|---|
| **FOR OFFICE USE ONLY:** Case Number: _____ | |

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [ X ] No [ ] Yes

If yes, list case number(s): _____

VIII(b). **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [ X ] No [ ] Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Deckers Outdoor Corporation - Santa Barbara County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Romeo & Juliette, Inc. - Santa Barbara County | Defendant Tom Romeo - Sacramento County |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All claims arose in Santa Barbara County. | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date November 8, 2010

Richard A. Schirtzer

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |